UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JAMES P. B.[1], | : |
| Petitioner, | : Civil Action No. 21-4810 (JMV) |
| v. | : OPINION |
| RONALD P EDWARDS, | : |
| Respondent. | : |

**VAZQUEZ, District Judge:**

Presently before the Court is Petitioner's counseled Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging his ongoing immigration detention since January 2, 2020. (D.E. 1.) The Government filed an Answer opposing relief, (D.E. 3.), and Petitioner filed a Reply, (D.E. 4.). For the reasons stated below, the Court will grant the Petition and direct the Government to provide Petitioner with an individualized bond hearing before an immigration judge within twenty-one days of the date of the accompanying Order.

I. BACKGROUND

Petitioner is a native and citizen of Liberia, who entered the United States at an unknown place and date without inspection or authorization. (D.E. 3-1, at 5.) On April 19, 2012, in the District of Maryland, Petitioner was convicted of conspiracy to distribute marijuana, in violation of 21 U.S.C. § 846, and a money laundering conspiracy in violation of 18 U.S.C. § 1956(h). (D.E.

---

[1] The Petitioner is identified herein only by his first name and the first initials of his surnames in order to address certain privacy concerns associated with § 2241 immigration cases. The identification of Petitioner in this manner comports with recommendations made by the Judicial Conference of the United States' Committee on Court Administration and Case Management.

3-2.) On April 12, 2017, the district judge resentenced Petitioner and reduced his sentence to a term of 235 months in prison, to run concurrent with a prior sentence. (D.E. 3-3.) On January 2, 2020, the Bureau of Prisons released Petitioner from federal custody and transferred him into the custody of Immigration and Customs Enforcement ("ICE"). ICE held Petitioner under the mandatory detention provisions of 8 U.S.C. § 1226(c).

On August 28, 2020, an immigration judge issued a decision granting Petitioner deferral of removal under the United Nations Convention Against Torture. (D.E. 1-8.) As set forth by the immigration judge:

> However, he has testified credibly that his mother and his half-brother were killed at his family's compound in Liberia in 1991. He has also testified that another brother was killed under unknown circumstances, and that his cousin Cindor Reeves was shot in Monrovia while staying at the respondent's family's compound sometime in 2009 to 2010.
>
> The respondent claims and the evidence in the record corroborates that Cindor Reeves' testimony was instrumental in convicting former President of Liberia, Charles Taylor. Taylor is currently serving a 50-year sentence at the Hague. However, the respondent testified and the evidence corroborates that Taylor's ex-wife is now the current vice president of Liberia. While the respondent has not been in Liberia since 1991, the record reflects that he is still well known as he is written about in the newspaper frequently for someone who has not been in the country in almost 30 years.
>
> The respondent met his burden to show that it is more likely than not that he will be tortured in the future. The respondent has credibly testified that his family has been targeted for violence in Liberia over the past 30 years. And while his father lived without incident in Liberia from 1994 to 1997, that does not discount the likelihood of torture against the respondent. The respondent's father was old and sick upon return to Liberia and cannot be compared to the respondent's return to Liberia. The articles in the record show that the Liberian Immigration Service reports criminal deportees which are then further reported by the media.
>
> Additionally, the respondent's testimony and news article, demonstrate that the current President of Liberia, George Weah, has

> been given very negative news coverage for his relationship with the respondent. When he ran for president, his presence at the respondent's home when he was arrested in a drug laundering case contributed to very negative press. Additionally, even if it is not true, it is suggested by the news media that the President of Liberia, George Weah, has not visited the United States because he believes that the respondent has given information to the Government that would be cause for his prosecution.
>
> The respondent testified that George Weah did engage in illegal activity and that he did give the respondent money with interest to operate his drug trafficking operation in the United States. The respondent testified that as part of his cooperation, he told the Government about Weah's involvement. The Court finds that if a newspaper in Liberia could figure out this connection, it is not hard to believe that George Weah himself would not have guessed that the respondent has cooperated against him. The respondent received a sentence of 22 years for his drug trafficking conviction, yet, only served ten, which is strong evidence of a cooperation agreement.
>
> Additionally, the shooting of Cinder Reeves at the respondent's family's compound demonstrates that Charles Taylor supporters are still active on his behalf in Liberia. Additionally, as stated above, his ex-wife is currently the vice president of Liberia, which corroborates the respondent's claim that Taylor supporters still hold significant weight in the country. The killing of the respondent's mother and half-brother in 1991 by Taylor supporters also adds to the likelihood of those individuals harming the respondent. Additionally, because of the respondent's notoriety, those supporters would likely be aware that the compound that Reeves was staying at belonged to the respondent and that he offered them support. And as stated earlier, it would be well known that the respondent was returning to Liberia because of news reports of criminal deportees, especially ones who are well known in Liberia.
>
> Accordingly, based on the totality of the circumstances, the Court finds that it is more likely than not that the respondent will be tortured in Liberia.

(D.E. 1-8, at 4–6.) The Government appealed that decision to the Board of Immigration Appeals ("BIA"), where the matter remains pending.

Petitioner filed the instant Petition on March 11, 2021. (D.E. 1.) Petitioner argues that his prolonged detention violates his due process rights under the Fifth Amendment. (*Id*. at 17–18.) In

terms of relief, Petitioner requests that the Court order a bond hearing or release him from custody. In response, the Government maintains that Petitioner's detention remains "lawfully permissible," emphasizing that "the Government is not responsible for [the] delays in Petitioner's removal proceedings," and that his detention continues to serve the purpose of mandatory detention under § 1226(c). (D.E. 3, at 4–5.)

## II. ANALYSIS

Under 28 U.S.C. § 2241(c)(3), a court may grant habeas relief to an immigration detainee who "is in custody in violation of the Constitution or laws or treaties of the United States." In the present case, Petitioner contends that his continued detention has become so prolonged that it amounts to an unconstitutional application of 8 U.S.C. § 1226(c). Under that statute, Petitioner is subject to mandatory detention due to the nature of his criminal convictions.

The Third Circuit's decision in *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 210–11 (3d Cir. 2020), governs Petitioner's claim and request for an individualized bond hearing. In that case, the Court clarified that its due process analysis in *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015), and *Diop v. ICE/Homeland Security*, 656 F.3d 221 (3d Cir. 2011), survives the Supreme Court's 2018 decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). *See German Santos*, 965 F.3d at 210 (explaining that *Jennings* "did not touch the constitutional analysis that led *Diop* and *Chavez-Alvarez* to their reading"); *Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018) ("Jennings did not call into question our constitutional holding in *Diop* that detention under § 1226(c) may violate due process if unreasonably long."); *Ordanny E.G., v. Ortiz*, No. 21-5502, 2021 WL 2910741, at *2 (D.N.J. July 8, 2021). "Therefore, the constitutional analysis in *Diop* and *Chavez Alvarez* is still good law, and those cases govern as-applied challenges under §

1226(c)." *Ordanny*, 2021 WL 2910741, at *2; *see also, e.g., Patrick J. v. Anderson*, No. 20-2665, 2020 WL 7074384, at *2 (D.N.J. Dec. 3, 2020); *Dominic A. v. Anderson*, No. 20-2420, 2020 WL 6636362, at *2 (D.N.J. Nov. 12, 2020).

Under *German Santos*, district courts must consider the following factors when evaluating the constitutionality of prolonged detention under 8 U.S.C. § 1226(c):

> (1) the length of detention in light of the likelihood of whether detention under the statute is likely to continue; (2) the reasons for the delay which caused the petitioner's detention to become prolonged, including whether either party made errors in bad faith or out of carelessness, which unnecessarily prolonged removal the proceedings; and (3) finally whether the conditions of confinement are 'meaningfully different from criminal detention.'

*Ordanny*, 2021 WL 2910741, at *2 (quoting *German Santos*, 965 F.3d at 210–11). The Third Circuit emphasized that the first factor, the length of detention, bears the most weight and is the most important consideration. *German Santos*, 965 F.3d at 211. Although the Third Circuit rejected a bright-line rule, the Court reaffirmed that when detention becomes so prolonged as to be "unreasonable, the Due Process Clause demands a [bond] hearing." *Id.* at 210. As to the second factor, if there is no evidence of carelessness or bad faith on either side, that factor may remain neutral. *Id.* at 213.

Courts within this District have held that detention for greater than one year can violate due process. *See e.g., Ordanny*, 2021 WL 2910741, at *3 (16 months); *Patrick J.*, No. 20-2665, 2020 WL 7074384, at *2 (D.N.J. Dec. 3, 2020) (18 months); *Felix S. v. Decker*, No. 20-1414, 2020 WL 1527982, at *4 (D.N.J. Mar. 31, 2020) (14 months); *Charran R. v. Barr*, No. 19-16070, 2020 WL 219872, at *4 (D.N.J. Jan. 14, 2020) (21 months); *Malcolm A. H. v. Green*, 403 F. Supp. 3d 398, 402 (D.N.J. 2019) (14 months); *Pryce v. Green*, No. 18-3501, 2019 WL 2118785, *4 (D.N.J. May 15, 2019) (22 months); *Oscar B. v. Warden, Essex Cty. Corr. Facility*, No. 18-11524, 2019

WL 1569822, at *3 (D.N.J. Apr. 10, 2019) (16 months); *Thomas C. A. v. Green*, No. 18-1004, 2018 WL 4110941, at *5–6 (D.N.J. Aug. 29, 2018) (15 months); *K.A. v. Green*, No. 18-3436, 2018 WL 3742631, at *4 (D.N.J. Aug. 7, 2018) (19 months).

With those principles in mind, Petitioner has been detained pursuant to § 1226(c) for over eighteen months. Petitioner's period of detention exceeds the constitutionally suspect one-year threshold in *Chavez-Alvarez*, 783 F.3d at 477. Additionally, although the Government's appeal is fully briefed before the BIA, "it is unclear how long the appeal may remain pending." (D.E. 3, at 9–10.) As the Government points out, many of the delays in this case were due to the COVID-19 pandemic, and that the pandemic may continue to delay this case. (*Id*.) As such, Petitioner's detention is likely to continue for a period of time that is out of Petitioner's control. For all of those reasons, the Court finds that the first factor weighs in Petitioner's favor.

As to the second factor, the parties agree that the majority of the delays in this case were the result of the COVID-19 pandemic. Petitioner's two continuances, to procure counsel and for attorney preparation time, did not unnecessarily delay the removal proceedings. And Petitioner did succeed in his application for deferral of removal under the Convention Against Torture. (D.E. 1-8.) Nor does the length of Petitioner's detention appear to be the result of bad faith or carelessness on the part of Petitioner or the Government. Accordingly, the Court finds that the second factor remains neutral. *See German Santos*, 965 F.3d at 210–12.

As to the final factor, Petitioner's conditions of confinement at the Hudson County Correctional Center "are not meaningfully distinguishable from criminal punishment, particularly in light of the ongoing COVID-19 pandemic." *See Ordanny*, 2021 WL 2910741, at *3. In its Answer, the Government summarily concludes that Petitioner's confinement is "meaningfully different" from criminal punishment and then refers to the declaration of Director Ronald Edwards.

(D.E. 3, at 10–11.) That declaration, however, does little to distinguish between the conditions of ICE detainees and regular inmates. Indeed, apart from employing separate staff and housing ICE detainees in a separate location, (D.E. 3-4, at ¶ 4.), the vast majority of the declaration describes how the facility treats inmates and detainees in the same manner due to the COVID-19 pandemic. As a result, the Court finds that the last factor weighs in Petitioner's favor.

Accordingly, the Court concludes that the *German Santos* factors weigh in favor of Petitioner and that his eighteen-month detention is unreasonable. The Court will grant the Petition and direct the Government to provide Petitioner with a bond hearing before an immigration judge, where the Government bears the burden of proof to justify detention by clear and convincing evidence. S*ee German Santos*, 965 F.3d at 213 ("We have already held that the Government bears the burden of proof. That burden, we now hold, is to justify detention by clear and convincing evidence.").

### III. CONCLUSION

For the reasons discussed above, the Court will grant the Petition and direct the Government to provide Petitioner with an individualized bond hearing before an immigration judge within twenty-one days of the date of the accompanying Order.

7/15/21
Date

JOHN MICHAEL VAZQUEZ
United States District Judge